AUSAs: Jun Xiang / Kathryn Wheelock / Timothy Ly

| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | 25 MAG 487 |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRAYAN OLIVEROS-CHERO and<br>SANDRO OLIVEROS-CHERO,<br><br>Defendants. | **SEALED COMPLAINT**<br><br>Violations of 21 U.S.C. § 846, and<br>18 U.S.C. §§ 922(g), 924(c), 924(o), and 2<br><br>COUNTY OF OFFENSE:<br>BRONX |

SOUTHERN DISTRICT OF NEW YORK, ss.:

  MICHAEL BONNER, being duly sworn, deposes and says that he is a Special Agent with Homeland Security Investigations ("HSI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Distribute Narcotics)

  1. From at least in or about July 2024 up to and including at least in or about October 2024, in the Southern District of New York and elsewhere, BRAYAN OLIVEROS-CHERO and SANDRO OLIVEROS-CHERO, the defendants, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States.

  2. It was a part and an object of the conspiracy that BRAYAN OLIVEROS-CHERO and SANDRO OLIVEROS-CHERO, the defendants, and others known and unknown, would and did distribute and possess with the intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

  3. The controlled substances involved in the offense were: (i) a quantity of mixtures and substances containing a detectable amount of methamphetamine, (ii) a quantity of mixtures and substances containing a detectable amount of ketamine, and (iii) a quantity of mixtures and substances containing a detectable amount of marijuana, in violation of Title 21, United States Code, Sections 841(b)(1)(C) and (b)(1)(D).

(Title 21, United States Code, Section 846.)

## COUNT TWO
### (Firearms Use, Carrying, and Possession)

  4. From at least in or about July 2024 up to and including at least in or about October 2024, in the Southern District of New York and elsewhere, BRAYAN OLIVEROS-CHERO and SANDRO OLIVEROS-CHERO, the defendants, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the drug trafficking

crime charged in Count One of this Complaint, knowingly used and carried firearms, and in furtherance of such crime, possessed firearms, and aided and abetted the use, carrying, and possession of firearms.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

## COUNT THREE
### (Firearms Use, Carrying, and Possession – Conspiracy)

5. From at least in or about July 2024 up to and including at least in or about October 2024, in the Southern District of New York and elsewhere, BRAYAN OLIVEROS-CHERO and SANDRO OLIVEROS-CHERO, the defendants, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 924(c).

6. It was a part and an object of the conspiracy that BRAYAN OLIVEROS-CHERO and SANDRO OLIVEROS-CHERO, the defendants, and others known and unknown, would and did, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the drug trafficking crime charged in Count One of this Complaint, knowingly use and carry one or more firearms, and, in furtherance of such crime, possess one or more firearms, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

(Title 18, United States Code, Section 924(o).)

## COUNT FOUR
### (Possession of Ammunition by Illegal Alien)

7. From at least in or about July 2024 up to and including at least in or about October 2024, in the Southern District of New York and elsewhere, BRAYAN OLIVEROS-CHERO, the defendant, knowing he was an alien illegally or unlawfully in the United States, knowingly possessed ammunition, to wit, PMC Smith & Wesson .40 caliber ammunition, and the ammunition was in and affecting commerce.

(Title 18, United States Code, Section 922(g)(5).)

## COUNT FOUR
### (Possession of a Firearm and Ammunition by Illegal Alien)

8. From at least in or about July 2024 up to and including at least in or about October 2024, in the Southern District of New York and elsewhere, SANDRO OLIVEROS-CHERO, the defendant, knowing he was an alien illegally or unlawfully in the United States, knowingly possessed a firearm and ammunition, to wit, a Glock Model 19 9mm pistol and PMC .40 caliber ammunition, and the firearm and ammunition were in and affecting commerce.

(Title 18, United States Code, Section 922(g)(5).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

9.      I am a Special Agent with Homeland Security Investigations and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, and my conversations with law enforcement officers, law enforcement employees, and witnesses, as well as my review of documents. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

10.     Since at least in or about October 2024, I have been conducting an investigation of suspected members and affiliates of the transnational gang Tren de Aragua ("TDA"), including BRAYAN OLIVEROS-CHERO and SANDRO OLIVEROS-CHERO, the defendants. Photographs of the defendants from law enforcement databases appear below.


BRAYAN OLIVEROS-CHERO



SANDRO OLIVEROS-CHERO

11. Based on my review of immigration records[1] and my conversations with other law enforcement and immigration officers, I have learned, in substance and in part, the following:

a. BRAYAN OLIVEROS-CHERO, the defendant, is a Venezuelan national without lawful immigration status in the United States. On or about May 8, 2023, BRAYAN OLIVEROS-CHERO was encountered near the border and detained by immigration enforcement authorities. He was thereafter released pending an immigration removal proceeding. On or about June 7, 2024, an Immigration Judge issued a Order of Removal to remove BRAYAN OLIVEROS-CHERO to Venezuela.

b. SANDRO OLIVEROS-CHERO, the defendant, is a Venezuelan national without lawful immigration status in the United States. On or about May 4, 2023, SANDRO OLIVEROS-CHERO was encountered near the border and detained by immigration enforcement authorities. He was thereafter released pending an immigration removal proceeding. On or about August 11, 2023, an Immigration Judge issued an Order of Removal to remove SANDRO OLIVEROS-CHERO to Venezuela.

12. Based on my training and experience, my review of publicly available social media accounts, my interviews of current and former self-identified TDA members, and my personal surveillance of individuals identified by witnesses as, or otherwise believed to be TDA members, I know that TDA is a violent transnational gang, originating in Venezuela, that has established a

---

[1] In immigration records, BRAYAN OLIVEROS-CHERO's name appears as "Brayan Alexander Olivares-Chero" and SANDRO OLIVEROS-CHERO's name appears as "Sandro Junior Olivares-Chero." I know that the defendants are the same individuals referenced in the immigration records because I have compared other identifying information, such as Alien Registration Number, date of birth, and photographs.

substantial foothold in the United States, including in New York City. I have also become aware that there are substantial intra-gang conflicts within TDA and that, in some cases, TDA members have disavowed the gang and described themselves as "Anti-Tren." I am aware that TDA members have engaged in numerous shootings and murders and that much of this violence is driven by hostilities between TDA and "Anti-Tren" members. Moreover, I am aware that a gang member's self-identification as TDA or "Anti-Tren" can be fluid and that the same gang member may switch between the two affiliations depending on time and context.

### The October 7, 2024 Traffic Stop

13. Based on my participation in this investigation, my review of documents, law enforcement records, and other evidence, including surveillance video recordings, and my conversations with other law enforcement officers, I have learned, in substance and in part, the following:

   a. On or about October 7, 2024, police officers conducted a traffic stop of a vehicle that SANDRO OLIVEROS-CHERO, the defendant, was driving (the "Vehicle") because they observed the Vehicle drive the wrong way into oncoming traffic. When the officers approached the Vehicle's window, they saw a digital scale containing apparent drug residue in the cup holder of the front console. There were two other passengers inside the Vehicle. SANDRO OLIVEROS-CHERO was arrested on state charges.

   b. Upon searching the Vehicle, officers recovered glassines of apparent "tusi" inside the vehicle, including underneath the driver seat. Based on my training and experience, "tusi" or "pink cocaine" is a pink substance that often contains one or more of cocaine, methamphetamine, or ketamine, each of which is a controlled substance under the Controlled Substances Act.

   c. The suspected "tusi" from the vehicle was laboratory-tested and found to contain ketamine.

### The October 9, 2024 Premises Search

14. On or about October 9, 2024, law enforcement officers executed a search warrant authorized by the Honorable Robert W. Lehrburger, United States Magistrate Judge, of an apartment located on DeKalb Avenue in the Bronx, New York ("the Apartment") where BRAYAN OLIVEROS-CHERO and SANDRO OLIVEROS-CHERO, the defendants, both lived. I personally participated in the execution of the search and I have discussed the search with other participating law enforcement officers and reviewed documents prepared by others relating to the search. Based on the foregoing, I have learned, among other things, the following:

   a. The Apartment is a multi-bedroom residence.

   b. At the time of the execution of the warrant, the occupants of the Apartment included BRAYAN OLIVEROS-CHERO, a woman who identified herself as BRAYAN OLIVEROS-CHERO's wife ("BRAYAN's Wife"), a woman who identified herself as SANDRO OLIVEROS-CHERO's girlfriend ("SANDRO's Girlfriend"), and others. SANDRO OLIVEROS-

5

CHERO was not present because he was in state pretrial detention from the October 7, 2024 traffic stop described above.

   c. Inside one bedroom of the Apartment ("Bedroom-1"), law enforcement recovered, among other items, the following:

    i. A blue and gray Glock Model 19 9mm pistol loaded with 9mm ammunition of assorted makes, an extended magazine containing 9mm ammunition of assorted makes, and a box of PMC .40 caliber ammunition, shown below, all of which were inside the closet;



    ii. A ziplock bag containing apparent "tusi," multiple ziplock bags containing apparent marijuana, drug residue, a digital scale, and other drug paraphernalia, shown below; and



       iii.      A wallet, which appeared to bear drug residue, shown below, containing identity documents for SANDRO OLIVEROS-CHERO.



       d.      The suspected "tusi" recovered inside Bedroom-1 was laboratory-tested and found to contain methamphetamine and ketamine. The suspected marijuana recovered inside Bedroom-1 was laboratory-tested and confirmed to be marijuana.

7

e. At the time of the search, the only occupant of Bedroom-1 was SANDRO's Girlfriend.

f. Inside another bedroom of the Apartment ("Bedroom-2"), law enforcement recovered, among other items, the following:

i. A .40 caliber privately made firearm (a "ghost gun") loaded with PMC Smith & Wesson .40 caliber ammunition, an extended magazine containing PMC Smith & Wesson .40 caliber ammunition, and two loose rounds of PMC Smith & Wesson .40 caliber ammunition, shown below, all of which were inside a backpack;



ii. A leather bag containing strips of an apparent controlled substance, shown below;



iii. Parcels of apparent marijuana packaged for sale, as well as a ziplock bag containing approximately 43 multi-colored tablets, shown below;



9



   iv. Mail and jail discharge paperwork for BRAYAN OLIVEROS-CHERO; and

   v. A Venezuelan identity card showing BRAYAN OLIVEROS-CHERO's photograph but bearing the name "Jose Manuel Gonzalez Silva."

  g. The multi-colored tablets recovered from Bedroom-2 were laboratory-tested and found to contain methamphetamine.  The suspected marijuana recovered from Bedroom-2 was laboratory-tested and found to contain marijuana.

  h. At the time of the search, the only occupants of Bedroom-2 were BRAYAN OLIVEROS-CHERO, BRAYAN's Wife, and their minor children.  BRAYAN OLIVEROS-CHERO was taken into immigration custody.

BRAYAN OLIVEROS-CHERO's Cellphone

  15. On or about October 18, 2024, the Honorable Sarah L. Cave, United States Magistrate Judge, authorized a warrant to search a cellphone that was seized from BRAYAN OLIVEROS-CHERO (the "BRAYAN Phone") during the October 11, 2024 search described above.  Based on my ongoing review of the BRAYAN Phone, I have learned, among other things, the following:

  a. The BRAYAN Phone contains a photograph of BRAYAN OLIVEROS-CHERO and SANDRO OLIVEROS-CHERO with a third person holding a firearm, shown below.  In the photograph, the defendants appear to be throwing up gang signs and their faces are partially obscured by emojis.  The defendants are recognizable by their distinctive full-arm tattoos.



b. The BRAYAN Phone contains photographs of SANDRO OLIVEROS-CHERO clearly showing his face and arm tattoos, shown below.



    c. The BRAYAN Phone contains photographs of BRAYAN OLIVEROS-CHERO clearly showing his face and arm tattoos, including the example below. BRAYAN OLIVEROS-CHERO is circled in red.



    d. The BRAYAN Phone contains a video of SANDRO OLIVEROS-CHERO packaging apparent "tusi," shown in the still images below. As discussed above, the suspected "tusi" recovered inside Bedroom-1 (where SANDRO OLIVEROS-CHERO's identification was also found) was laboratory-tested and found to contain methamphetamine and ketamine. The video was recorded in or about July 2024.



12

e.  The BRYAN Phone contains video recordings that were created on or about July 29, 2024.  The recordings depict, among other things: (i) guns—at least one of which appears to be a firearm later recovered during the October 9, 2024 search—lying next to apparent "tusi" and cash, (ii) BRAYAN OLIVEROS-CHERO and SANDRO OLIVEROS-CHERO dancing together, while SANDRO OLIVEROS-CHERO waves around a gun with an extended magazine, and (iii) hands (including a hand that bears SANDRO OLIVEROS-CHERO's hand tattoos) holding the firearms.  Still images appear below.



13



    f. The BRAYAN Phone contains a WhatsApp conversation between BRAYAN OLIVEROS-CHERO and an individual ("Person-1") in or about August 2024, which included text messages.  In that WhatsApp conversation, Person-1 stated to BRAYAN OLIVEROS-CHERO, in substance: "Brother, I'm going to pass by with Sandro's 50 can you have 20 of marijuana ready for me?  I will square it away with you later, I just stepped out to work."  In response, BRAYAN OLIVEROS-CHERO texted, in substance: "Bro right now I don't have any marijuana, I went to a partner's to get some, but no luck."[2]

    g. The BRAYAN Phone also contains a WhatsApp conversation between BRAYAN OLIVEROS-CHERO and another individual ("Person-2") in or about October 2024, in the course of which BRAYAN OLIVEROS-CHERO and Person-2 left each other voice notes.  In one voice note, BRAYAN OLIVEROS-CHERO stated, in substance and in part: ". . . Let me cook it up . . . and send out some essence."  In response, Person-2 left a voice note stating, in substance

---

[2] These voice notes and other communications described in this Complaint are in Spanish.  My understanding of the substance of these communications is based on my discussions with a Spanish-speaking law enforcement officer or my review of written translations prepared by a Spanish-speaking law enforcement officer.

and in part: ". . . That half kilo that I have, I will give you 200 grams and keep 300, we can then pay that partner to get that stuff up here, are you clear?"

<u>The Firearms and Ammunition</u>

16. Based on my training and experience, and my communications with other law enforcement agents, including a Special Agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives, who is familiar with the manufacturing of firearms and ammunition, I am aware of the following:

 a. The Glock Model 19 9mm pistol found inside Bedroom-1 was not manufactured in the State of New York.

 b. The PMC .40 caliber rounds of ammunition found inside Bedroom-1 were not manufactured in the State of New York.

 c. The PMC Smith & Wesson .40 caliber rounds of ammunition found inside Bedroom-2 were not manufactured in the State of New York.

WHEREFORE, I respectfully request that warrants be issued for the arrests of BRAYAN OLIVEROS-CHERO and SANDRO OLIVEROS-CHERO, the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

s/ Michael Bonner /otw
_____
MICHAEL BONNER
Homeland Security Investigations

Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 4.1 and 41(d)(3), this
7th day of February, 2025

_____
THE HONORABLE ONA T. WANG
United States Magistrate Judge
Southern District of New York